IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


SOUTHWEST AIR AMBULANCE, INC.
and JOHN RICHARDSON,

        Plaintiffs,

vs.                                    No. CIV 99-622 LFG/DJS

CITY OF LAS CRUCES,

        Defendant.


**<u>MEMORANDUM OPINION AND ORDER</u>**

       THIS MATTER comes before the Court on Defendant City of Las Cruces' Motion to Dismiss [Doc. 10]. Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendant's motion to dismiss should be GRANTED.

I.

<u>Facts and Procedural History</u>

       In ruling on a motion to dismiss for failure to state a claim, the court must accept as true all the factual allegations in the complaint, construe them in a light most favorable to the plaintiff, and resolve all reasonable inferences in plaintiff's favor. Dismissal is inappropriate under Fed. R. Civ. P. 12(b)(6) unless the plaintiff can prove no set of facts in support of his claims to entitle him to relief. Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).

       Plaintiffs allege in their Complaint that their constitutional rights have been violated by the Defendant City of Las Cruces, which owns and operates the Las Cruces International Airport ("LCIA"). On or about June 1, 1998, Defendant adopted an ordinance requiring all local businesses

which conduct flight operations from LCIA to execute non-exclusive leases with Defendant, and to pay rental fees under those leases. Plaintiff Southwest Air Ambulance, Inc. ("SWAA") is a New Mexico corporation operating an air ambulance service between various points inside and outside of New Mexico, transporting emergency patients to and from hospitals and providing emergency medical assistance to these patients during transportation. SWAA carries on a portion of its business activities from its offices and hangar facilities located at LCIA. Plaintiff John Richardson ("Richardson") is president of SWAA.

Plaintiffs further allege that Richardson has often spoken out against the ordinance, and that Defendant has "variously threatened to criminally prosecute" both Plaintiffs, and others, if they refuse to voluntarily enter into leases with Defendant, and that on or about March 8, 1999, Defendant actually filed a criminal action against Richardson in Las Cruces Municipal Court. Plaintiffs assert that these actions violate their constitutional and statutory rights under 42 U.S.C. § 1983, constitute an illegal restraint on interstate commerce, violate various federal statutes including the Anti-Head Tax Act, and impose an illegal and unconstitutional tax upon SWAA. Jurisdiction is based on Section 1983, federal question jurisdiction, and pendent jurisdiction over state law claims. Complaint, at 2, ¶ 3.

Defendant moved to dismiss the Complaint for failure to state a claim. Defendant argues that there is no private remedy or Section 1983 claim for violation of the Anti-Head Tax Act, that Plaintiffs have no cognizable claim under the Commerce Clause, that Plaintiffs' challenges to the criminal prosecution are barred by the abstention doctrine of <u>Younger v. Harris</u>, and that Plaintiffs' state law claims for abuse of process and malicious prosecution must be dismissed. Defendant also seeks attorneys' fees under 42 U.S.C. § 1988.

II.

Discussion

A.  Claims Based on Violation of the Anti-Head Tax Act and the Commerce Clause.

     1.  Private Right of Action Under the Anti-Head Tax Act.

Defendant City of Las Cruces asserts that Plaintiffs brought their case in the wrong forum. The City claims that there is no private right of action under the Anti-Head Tax Act ("AHTA," currently codified at 49 U.S.C. § 40116), and that Plaintiffs' causes of action under that Act should have been brought before an Administrative Law Judge in the Department of Transportation rather than in federal court.

The AHTA was passed in 1973, in response to a Supreme Court ruling holding that states and municipalities may constitutionally impose a per-passenger fee on commercial airlines to help defray the costs of airport construction and maintenance.  The Court reasoned that:

> a facility provided at public expense aids rather than hinders the right to travel.  A permissible charge to help defray the cost of the facility is therefore not a burden in the constitutional sense . . . [a]t least so long as the toll is based on some fair approximation of use or privilege for use . . . and is neither discriminatory against interstate commerce nor excessive in comparison with the governmental benefit conferred.

Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc., 405 U.S. 707, 714, 716-17, 92 S. Ct. 1349, 1354, 1355 (1972).

The next year, in response to concerns that the Court's decision in Evansville might lead to a proliferation of local "head taxes" to burden interstate air commerce, Congress passed the AHTA. See, Northwest Airlines, Inc. v. County of Kent, 510 U.S. 355, 363, 114 S. Ct. 855, 861 (1994).  The AHTA is part of the Federal Aviation Act.  Northwest Airlines, at 355, 367 n.11.  It prohibits states and political subdivisions from collecting "a tax, fee, head charge, or other charge" on individuals

3

traveling in air commerce, on the transportation of an individual traveling in air commerce, on the sale of air transportation, or on the gross receipts from that air commerce or transportation. 49 U.S.C. § 40116(b).

The Act also provides specific exceptions to this prohibition and permits states to impose certain kinds of taxes traditionally levied by states or local governmental entities, such as property taxes, as well as reasonable rental charges, landing fees, and other service charges from aircraft operators for using airport facilities owned or operated by states and municipalities. 49 U.S.C. § 40116(e). The Supreme Court noted that this savings clause, that is, the exception to the taxation prohibition, was enacted in response to the states' concerns that the broad sweep of AHTA would prohibit "even unobjectionable taxes such as landing fees." Northwest Airlines, at 366.

Until 1994, courts considering the issue generally held that AHTA could be enforced by airlines in private actions brought in federal court. See, e.g., Interface Group, Inc. v. Massachusetts Port Auth., 816 F.2d 9 (1st Cir. 1987); Niagra Frontier Transportation Auth. v. Eastern Airlines, Inc., 658 F. Supp. 247 (W.D.N.Y. 1987). Because the AHTA is part of the Federal Aviation Act, airlines could also challenge charges, fees, or taxes set by airports under the administrative mechanisms of that Act. Indeed, in 1989, the First Circuit was faced with conflicting decisions from the Secretary of Transportation and a United States District Court, where two similar groups had filed challenges in the two separate forums to Logan Airport's landing fee scheme. New England Legal Found. v. Massachusetts Port Auth., 883 F. 2d 157 (1st Cir. 1989). In that case, the court noted that the Department of Transportation, through the Federal Aviation Administration, has:

> broad authority and responsibility to regulate navigable airspace to
> assure its efficient use . . . by private commerce, and to protect the
> right of freedom of transit through navigable airspace granted by

Congress to all persons. Indeed, it would be difficult to visualize a more comprehensive scheme of combined regulation, subsidization, and operational participation than that which Congress has provided in the field of aviation. [Internal citations and quotation marks omitted].

Id., at 172.

The circuit court further held that the District Court committed error in not deferring to the Secretary's primary jurisdiction over the controversy, in light of the Federal Aviation Act's "comprehensive plan of federal economic regulation of air transportation" and its "extensive and preclusive regulatory scheme for a uniform national aviation system." Id., at 172, 174.

Although not actually deciding the question because it had not been properly raised, the Supreme Court in 1994 made clear that a private right of action would not be its preferred approach to enforcement of the AHTA:

The Secretary of Transportation is charged with administering the federal aviation laws, including the AHTA. His Department is equipped, as courts are not, to survey the field nationwide, and to regulate based on a full view of the relevant facts and circumstances. If we had the benefit of the Secretary's reasoned decision concerning the AHTA's permission for the charges in question, we would accord that decision substantial deference.

Northwest Airlines, at 366-67.

The Court went on to describe the Secretary's enforcement mechanisms, noting that the Federal Aviation Act, "which encompasses the AHTA," authorizes the Secretary to conduct investigations, issue orders, and promulgate regulations necessary to implement the statute and provides a mechanism for administrative adjudication followed by judicial review. Id., at 367 n.11. This "mechanism" is set forth at 49 U.S.C. §§ 40113, 46101, 46110, 47129; and 14 C.F.R. pts. 13, 302 (1999).

The same year that Northwest Airlines was decided, Congress enacted § 113 of the Federal

Aviation Administration Authorization Act, codified at 49 U.S.C. § 47129. City of Los Angeles

Dept. of Airports v. Dept. of Transp., 103 F.3d 1027, 1030 (D.C. Cir. 1997). In this provision,

Congress created an expedited administrative procedure for determining the reasonableness of airport

fees and rates. The statute and its implementing regulations require that an airline wishing to

challenge the reasonableness of a fee increase, or imposition of a new fee, must file a written

complaint within 60 days after the airline receives written notice of the establishment or increase of

the fee. 49 U.S.C. § 47129(a)(1)(B); 14 C.F.R. § 302.603(b). However, § 47129 was intended to

provide an additional, expedited process for resolving reasonableness disputes upon an airline's

complaint; airlines still had available to them procedures for seeking a traditional investigation by the

Federal Aviation Administration under 14 C.F.R. pt. 13, which sets no deadline for taking

enforcement action. Air Canada v. Dept. of Transp., 148 F.3d 1142, 1145 (D.C. Cir. 1998).

Since the Supreme Court's decision in Northwest, one federal court has addressed the issue

of a private right of action under AHTA. In Air Transport Association v. City of Los Angeles, 844

F. Supp. 550, 554 (C.D. Cal. 1994), a District Court in California held that there was no private right

of action under AHTA, noting that "the Secretary is probably in a better position than the district

courts to protect the Airlines' rights against undue or discriminatory taxation through a uniform

national program." The court noted, furthermore, that AHTA was placed within the statutory

framework of the Federal Aviation Act without any mention of additional remedies, thus indicating

that Congress intended that claims brought under AHTA would be subject to the encompassing Act's

remedial provisions, and not enforceable in federal court via a private right of action. Id., at 554-55.

The court in Air Transport also emphasized the policy reasons behind denying AHTA litigants

of a private right of action. These include elimination of confusion and potentially inconsistent rulings

between the Secretary and the federal courts, as well as the laudatory result that all complaints about

airport fees will have to be funneled through the Secretary who is best able to monitor a consistent

nationwide scheme for determining reasonable fees. Id., at 555. See, New England Legal

Foundation, at 158-59 ("this jurisdictional dichotomy has created a confused class of circumforaneous

litigants, wandering perplexedly from forum to forum in search of remediation").

It is true, as Plaintiff points out, that some federal courts allowed a private right of action

under the AHTA, both implicitly and upon directly addressing the issue. These opinions are well

reasoned and would be persuasive but for the Supreme Court's decision in Northwest, a case which

changed the landscape considerably. Air Transport was decided after Northwest. It concludes that

no private right of action exists under the AHTA. This Court finds persuasive the reasoning of Air

Transport and, therefore, grants Defendant's motion to dismiss Plaintiff's claims based on violation

of the AHTA.

Plaintiffs still have administrative remedies. They are not limited to proceeding under 49

U.S.C. § 47129, which carries a 60-day limitation period, but may seek a traditional administrative

review under 49 U.S.C. § 46101 and 14 C.F.R. pt. 13, with the right to appeal an adverse decision

to federal court under 49 U.S.C. § 46110.

2. Section 1983 Claims Based on Violation of AHTA.

In addition to asserting a cause of action directly under AHTA, Plaintiffs also raise claims

under 42 U.S.C. §1983 based on violation of their federal statutory rights under AHTA. Section

1983 authorizes the imposition of liability against "[e]very person" who, acting under the color of

state law, violates another's federally protected rights. Martin A. Schwartz & John E. Kirkland, Section 1983 Litigation § 5.2 (3d ed. 1997). Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508, 110 S. Ct 2510, 2516 (1990). A right of action relating to deprivation, under color of state law, of a right secured by the Constitution and laws of the United States encompasses claims which are based solely on statutory violations of federal law as well as constitutional violations. Maine v. Thiboutot, 448 U.S. 1, 4, 100 S. Ct. 2502, 2504 (1980). It is well established that Section 1983 itself creates no substantive rights; it merely provides a remedy for deprivations of federal rights established elsewhere. City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S. Ct 2427, 2432 (1985).

A plaintiff alleging violation of a federal statute will be permitted to sue under Section 1983 unless: (1) the statute does not create enforceable rights, privileges, or immunities within the meaning of Section 1983, or (2) Congress has foreclosed such enforcement of the statute in the enactment itself. Wright v. City of Roanoke Redevelopment and Hous. Auth., 479 U.S. 418, 423, 107 S. Ct. 766, 770 (1987). Thus, a determination that Section 1983 is available to remedy a statutory or constitutional violation involves a two-step inquiry. First, the plaintiff must assert the violation of a federal right. To determine whether the statute creates a "federal right" enforceable under Section 1983, a three-prong test is applied. The Court must determine: (1) whether the provision is intended to benefit the plaintiff; (2) whether the provision imposes a binding obligation on the governmental unit; (3) whether the interest is "too vague and amorphous" for judicial enforcement. Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 106, 110 S. Ct. 444, 448 (1989).

Second, even when the plaintiff has asserted a federal right, the defendant may show that Congress "specifically foreclosed a remedy under § 1983." Id. Congress may do so expressly in the statute itself or "impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." Blessing v. Freestone, 520 U.S. 329, 341, 117 S. Ct. 1353, 1360 (1997). The availability of administrative mechanisms to protect the plaintiff's interests is not necessarily sufficient to demonstrate that Congress intended to foreclose a Section 1983 remedy; rather, the statutory framework must be such that allowing the plaintiff to bring a Section 1983 action would be inconsistent with Congress' carefully tailored scheme. Golden State at 107, S. Ct. at 448. The burden is on the defendant to demonstrate that Congress has expressly withdrawn the Section 1983 remedy. The Court does not lightly conclude that Congress intended to preclude reliance on Section 1983 as a remedy for the deprivation of a federally secured right. Id. (quoting Smith v. Robinson, 468 U.S. 992, 1012, 104 S. Ct. 3457, 3468 (1984)).

In the present case, it is unnecessary to examine the first prong of the Golden State analysis and determine whether Plaintiffs have asserted the violation of a federal right, because the Court finds, under the second prong of the analysis, that Congress specifically foreclosed a remedy under Section 1983 based on an AHTA violation. In Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1, 101 S. Ct 2615 (1981), a congressional intent to foreclose resort to Section 1983 was found in a comprehensive remedial scheme that left no room for additional private remedies under Section 1983. The Court in Sea Clammers found this "sufficiently comprehensive" enforcement scheme in the Federal Water Pollution Control Act, where "the use of noncompliance orders, civil suits, and criminal penalties . . . evidenced a congressional intent to foreclose reliance on § 1983." Wilder, at 521. Similarly, Smith v. Robinson, at 1012, held that

allowing a plaintiff to circumvent the Education of the Handicapped Act's administrative remedies would be inconsistent with Congress' carefully tailored scheme, which itself allowed private parties to seek remedies for violating federal law. The inclusion of these specific remedies in the Act "manifested Congress' desire to foreclose private reliance on Section 1983 as a remedy" through the elaboration of a "carefully tailored administrative and judicial mechanism." <u>Wilder</u>, at 521.

Where there is no express provision in the statute in question curtailing a Section 1983 cause of action, the state actor must make the "difficult showing that allowing § 1983 actions to go forward in these circumstances would be inconsistent with Congress' carefully tailored scheme." In <u>Sea Clammers</u>, the Court relied on the fact that the statutory scheme of the Federal Water Pollution Control Act (FWPCA) and the Marine Protection, Research, and Sanctuaries Act (MPRSA) included "unusually elaborate enforcement provisions" which conferred, on both government officials and private citizens, authority to sue. <u>Sea Clammers</u>, at 13. The FWPCA authorizes the EPA Administrator to enforce the Act with compliance orders and civil suits. In addition, both civil fines and criminal penalties are available for violation of the Act, states are required to include in their own permit programs civil and criminal penalties, and "any interested person" is allowed to seek judicial review of various particular actions by the EPA Administrator. Most of these enforcement mechanisms are also found in the MPRSA. <u>Id.</u>, at 14. Given this "panoply of enforcement options" (<u>Blessing</u>, at 1362), the Court found it "hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies, including the two citizen-suit provisions." <u>Sea Clammers</u>, at 20.

The statute at issue in <u>Smith v. Robinson</u>, the Education of the Handicapped Act (EHA), laid out a "carefully tailored scheme," indicating that "Congress intended the EHA to be the exclusive

avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education." Smith, at 1008, 1009. The "elaborate procedural mechanism" of the EHA was designed to ensure that hearings conducted by the state would be fair and adequate and was meant to effect the congressional intent that "each child's individual educational needs be worked out through a process that begins on the local level and includes ongoing parental involvement, detailed procedural safeguards, and a right to judicial review." Id., at 1010-11.

Although, as noted above, there is nothing explicit in the AHTA itself setting forth an airline's remedies for violation of the Act, Congress inserted the AHTA into the Federal Aviation Act which had an already-existing comprehensive administrative structure for enforcement of its provisions. 49 U.S.C. § 40113(a) gives the Secretary of Transportation all duties and powers necessary to enforce the statute, including "conducting investigations, prescribing regulations, standards, and procedures, and issuing orders." 49 U.S.C. § 46101 provides that a person may file a complaint in writing with the Secretary of Transportation about a "person violating this part or a requirement prescribed under this part." "This part" refers to Part A of the statute, which includes the AHTA. Upon receiving a complaint, the Secretary conducts an investigation and, after providing notice and an opportunity for a hearing, the Secretary issues an order compelling compliance, if a violation is found to have occurred. An additional expedited procedure for seeking resolution of airport - air carrier disputes concerning landing fees is set forth in 49 U.S.C. § 47129. Regulations governing the procedures for hearing complaints are codified at 14 C.F.R. pt. 13 ("Investigative and Enforcement Procedures"), and 14 C.F.R. pt. 302 ("Rules of Practice in Proceedings"). Orders of the Secretary may be reviewed by the United States Court of Appeals, upon petition by an interested person. 49 U.S.C. § 46110.

These provisions parallel the "carefully tailored local administrative procedure, followed by federal judicial review," involved in <u>Smith v. Robinson</u>, and the "unusually elaborate enforcement mechanisms" of the statute at issue in <u>Sea Clammers</u> (as described in <u>Blessing</u>, at 1362-63). Although there is nothing in the AHTA which explicitly forecloses a Section 1983 action, Defendant has met its burden of showing that the enforcement scheme of the Federal Aviation Act, of which the AHTA is a part, is sufficiently comprehensive to imply a congressional intent that the administrative procedures are meant to preclude resort to Section 1983. <u>See</u>, <u>Air Transport Association</u>, at 559-60:

> Where the federal law that was allegedly violated provides a comprehensive remedial scheme, that scheme may not be avoided by recourse to § 1983 . . . While the AHTA does not have its own remedial scheme, the FAA [Federal Aviation Act] does . . . [G]iven this court's conclusion that the AHTA shares the remedial scheme with the FAA, . . . [t]here can be no 1983 claim predicated on the alleged violation of the AHTA.

Defendant's motion to dismiss Plaintiff's claim under Section 1983, based on violation of AHTA, is granted.

### 3. Commerce Clause Claims.

Plaintiffs make a general claim in their complaint that Defendant's actions "constitute an illegal restraint upon interstate commerce," in violation of the Commerce Clause. Complaint, at 1, Jurisdictional Statement, ¶ 1. In their Amended Response to Defendant's Motion to Dismiss, at 10, Plaintiffs assert that the fee at issue in this case is illegal under both the AHTA and the Commerce Clause, and that "The AHTA incorporates the principles of the dormant Commerce Clause and where applicable, a separate Commerce Clause claim need not be brought. But if the AHTA is found inapplicable for some reason, a dormant Commerce Clause claim remains." Amended Response, at 10 n.3. Plaintiffs do not cite any authority for the proposition that a Commerce Clause claim may be

brought "if the AHTA is found inapplicable for some reason." Defendant argues that any claims of Plaintiffs based on the Commerce Clause are foreclosed by the AHTA.

It has been held that although the Commerce Clause of its own force, without the need for congressional involvement, prohibits state action which discriminates against interstate commerce, an action based directly on the Commerce Clause "fails when Congress has exercised its regulatory power." <u>Indianapolis Airport Auth. v. American Airlines, Inc.</u>, 733 F.2d 1262, 1266 (7th Cir. 1984).

> Once Congress acts, courts are not free to review state taxes or other regulations under the dormant Commerce Clause. When Congress has struck the balance it deems appropriate, the courts are no longer needed to prevent the States from burdening commerce, and it matters not that the courts would invalidate the state tax or regulation under the Commerce Clause in the absence of congressional action.

<u>Merrion v. Jicarilla Apache Tribe</u>, 455 U.S. 130, 154, 102 S. Ct. 894, 910 (1982). "The standard articulated in the AHTA coupled with the regulatory provisions providing for administrative and judicial review of challenged fees support the conclusion that Congress has affirmatively acted in this area," thus foreclosing dormant Commerce Clause review. <u>Air Transport Association</u>, at 556.

The Court finds this reasoning persuasive and dismisses Plaintiff's claims challenging the airport fees, insofar such claims are brought directly under the Commerce Clause. And because Congress has occupied the field with the AHTA, the Commerce Clause provides no rights enforceable under Section 1983, <u>Air Transport</u>, at 560. This is true even though the Commerce Clause would otherwise provide the basis for a Section 1983 action; <u>see</u>, <u>Dennis v. Higgins</u>, 498 U.S. 439, 446, 111 S. Ct. 865, 870 (1991).

### 4. <u>Claims for Declaratory and Injunctive Relief</u>.

Count II of Plaintiffs' Complaint, at 8-10, alleges an action for declaratory relief. Plaintiffs

seek a declaratory judgment that the ordinance in question and the rental charges it imposes are illegal and unconstitutional, and that Plaintiff SWAA cannot be required to execute Defendant's lease. This claim is based on the alleged statutory and constitutional violations which have been dismissed; therefore, the claim for declaratory relief is also dismissed.

In Count III of the Complaint, Plaintiffs seek injunctive relief of two sorts. Both Plaintiffs ask the Court to enjoin Defendant from criminally prosecuting either of them for their refusal to enter into a lease with the City, and Plaintiff SWAA seeks an injunction prohibiting Defendant from interfering with its right to operate into and from the LCIA. The first claim for injunctive relief is discussed in Part B below. With regard to the request that the Court enjoin Defendant from interfering with SWAA's operations at the airport, this request is based on the alleged illegality and unconstitutionality of the City's ordinance imposing lease and fee requirements on SWAA. Because the Court has found that these claims are not cognizable in this action, this portion of Count III is dismissed. Therefore, the Court need not consider the issue raised by Defendant involving the Tax Injunction Act.

B. <u>Claims Based on Criminal Prosecutions</u>.

1. <u>Plaintiffs' Allegations</u>.

Plaintiffs allege that Defendant City of Las Cruces threatened to criminally prosecute both of them for their refusal to enter into a lease with the City and, in the case of Plaintiff John Richardson, has actually instituted such a proceeding by filing a criminal action against him in the Municipal Court for the City of Las Cruces. Complaint, at 4-5, ¶¶ 11-12. Plaintiff Richardson further alleges that this prosecution was undertaken without probable cause, based on his association with SWAA, and in retaliation for his speaking out against the ordinance at issue in this case. Complaint, at 5-6, ¶¶ 15-

21. In Count III, Plaintiffs seek an injunction prohibiting the City from criminally prosecuting either of them for their refusal to sign the lease. In addition, Plaintiff Richardson seeks damages for abuse of process and malicious prosecution, alleging that Defendant has criminally prosecuted him "for ulterior purposes," to punish him for speaking out against the ordinance and to coerce him into acceding to the ordinance. Complaint, Count IV, at 12-13, ¶¶ 41-46.

      2. <u>Abstention</u>.

Defendant argues that the Court must apply the abstention doctrine of <u>Younger v. Harris</u>, 401 U.S. 37, 92 S. Ct. 746 (1971), to Plaintiffs' request for an injunction to halt any criminal prosecutions in this matter. Plaintiff Richardson alleges in the Complaint that on March 8, 1999, Defendant City of Las Cruces, acting through various law enforcement officials, filed a criminal action against him in Las Cruces Municipal Court. Complaint, at 5, ¶ 12. Plaintiff SWAA alleges that Defendant threatened to criminally prosecute the company if it refuses to enter into a lease with the City (Complaint, at 4-5, ¶ 11), but the Complaint makes no allegation that charges have actually been brought against SWAA. Plaintiffs have attached an affidavit of John Richardson to their Amended Response to the Motion to Dismiss, asserting that the municipal court has stayed the criminal enforcement action pending resolution of this litigation in federal court. Although additional evidence such as the Richardson affidavit is not appropriately considered on a motion to dismiss, nevertheless Defendant has conceded in its Reply Brief (at p. 6), that "the state court action has been temporarily stayed." In any case, the outcome is the same whether or not this allegation is considered; therefore, the Court does not rely on the affidavit as a "matter outside the pleadings" and need not convert Defendant's Rule 12(b)(6) motion into a motion for summary judgment. <u>Lowe v. Town of Fairland</u>, 143 F.3d 1378, 1381 (1998).

In <u>Younger v. Harris</u>, the Supreme Court cited the principles of equity, comity, and federalism in reversing a decision of a District Court which had enjoined the prosecution of an individual under state statutes which the plaintiff challenged as unconstitutional. The Court noted that, [s]ince the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." <u>Id</u>., at 43. The Court cited an earlier case in which it refused to enjoin state prosecutions under a recently enacted state law that allegedly interfered with the free flow of interstate commerce, holding that the accused should "first set up and rely upon his defense in the state courts, even though this involves a challenge to the validity of some statute, unless it plainly appears that this course would not afford adequate protection." <u>Id</u>., at 45, <u>quoting from</u> <u>Fenner v. Boykin</u>, 271 U.S. 240, 243-44, 46 S. Ct. 492, 493 (1926). An exception to the rule of abstention is based on the possibility of "great and immediate" irreparable injury; however, the inconvenience of having to defend against a single criminal prosecution is generally not seen as presenting such irreparable injury. <u>Younger v. Harris</u>, at 46.

The Court in <u>Younger</u> held that individuals who were not "actually being prosecuted," but who were concerned that they might be, were not proper parties to seek an injunction; the case proceeded with only the individual who was actually under indictment at the time, since he had "an acute, live controversy with the State and its prosecutor" <u>Id</u>., at 41, 42. Plaintiff SWAA has not been the subject of criminal prosecution, and although it alleges that it has been threatened with prosecution, this is not "sufficient to bring the equitable jurisdiction of the federal courts into play to enjoin a pending state prosecution." <u>Id</u>., at 42. The Court will therefore dismiss the claim for injunctive relief insofar as it seeks to enjoin the Defendant from a possible future prosecution of Plaintiff SWAA.

The claim for injunctive relief against the ongoing criminal prosecution of John Richardson must also be dismissed. Plaintiff points out that, because the criminal action has been stayed, there is currently no pending state proceeding as required for application of the Younger doctrine, citing Walnut Properties, Inc. v. City of Whittier, 861 F.2d 1102 (9th Cir. 1988). The court in Walnut Properties held that the concerns of federalism and comity which underlie Younger do not apply where the state court has "stayed its own proceedings pending resolution of the case in a federal forum." In those circumstances, the federal proceedings do not interfere with the legitimate activities of the state, because the state court has voluntarily chosen to have the case decided by a federal court. Id., at 1107. However, in Walnut Properties, the result was prompted as much by the fact that the defendant waited "far too late" to raise the issue, having overlooked it in two previous appeals.

In Association of Community Organizations for Reform Now (ACORN) v. Municipality of Golden, 744 F.2d 739 (10th Cir. 1984), the Tenth Circuit noted that the Younger abstention doctrine would ordinarily have applied in the case involving one of the plaintiffs, against whom criminal charges were pending for violation of a municipal ordinance the validity of which was at issue in the federal suit. However, the court noted that the defendant city had voluntarily stayed criminal proceedings against that individual, pending resolution of the validity of the ordinance in federal court. As was the case in Walnut Properties, this action by the city implied to the court that the defendant was not averse to having the federal court consider the issue, a conclusion bolstered by the fact that in ACORN, the city had never explicitly relied on Younger and in fact had not sought abstention at all; rather, the court seems to have raised the issue on its own. ACORN, at 742, n.2.

Walnut Properties and ACORN stand for the proposition that federal courts will not interfere with a state criminal proceeding unless the state unambiguously indicates that it is voluntarily

submitting to a federal forum, by doing such things as staying the criminal proceedings during pendency of the federal suit, and not arguing or relying on Younger from the beginning of the proceedings. In the present case, even if the municipal court has stayed the criminal proceedings against Richardson, Defendant has made it abundantly clear that it wishes to assert its right to seek abstention under Younger. In addition, Plaintiff alleges that the reason the state court stayed its criminal proceedings was in order to allow the federal court to determine the issue of validity of the ordinance. However, in light of the dismissal of Plaintiffs' claims under AHTA and Section 1983 in deference to the administrative forum, this Court will not be reaching the issue of the ordinance's validity. Even if the municipal court lifts its stay, the abstention principles of Younger v. Harris are applicable. As in Fenner v. Boykin, the propriety of the municipal prosecution is a matter that should be presented to appropriate state courts. Thus, it would be all the more inappropriate for the Court to enjoin the state criminal proceedings.

The Court will therefore dismiss Plaintiffs' claims for injunctive relief against ongoing or possible future criminal prosecutions under the ordinance at issue herein.

### 3. Plaintiff Richardson's Claims Based on Unlawful Criminal Prosecution.

Plaintiffs allege that Defendant has "engaged in abuse of process and malicious prosecution" against both of them (Complaint, Count IV, at 13, ¶ 45), and Plaintiff Richardson has alleged that Defendant's action in criminally prosecuting him violates his civil rights (Complaint, Count I, at 5-8). As noted above, there is nothing in the Complaint to indicate that any charges have been brought against SWAA, and the Court therefore does not have occasion to consider any claims based on criminal prosecution of SWAA.

The basis for Richardson's claims is not clearly set forth in the Complaint; however, the Court can deduce that he relies on Section 1983, as well as pendent jurisdiction for state law claims of malicious prosecution and abuse of process (see, Complaint, at ¶¶ 3, 13-21, 41-46).

A judgment for Richardson on this issue "would necessarily imply the invalidity of [any] conviction and sentence" in the state criminal proceedings; thus, such a claim is not cognizable under Section 1983:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 2372 (1994). Plaintiff has not made such a showing in this case, nor could he, since the criminal proceedings are ongoing (even if stayed at present). Therefore, to the extent he relies on Section 1983, his claims for unlawful criminal prosecution will be dismissed. To the extent that Richardson's claims are based on state law, the Court declines, having dismissed all federal claims, to exercise supplement jurisdiction over these state law claims. 28 U.S.C. § 1367(c)(3); Bateman v. City of West Bountiful, 89 F.3d 704, 709 n.5 (10th Cir. 1996).

C. Defendant's Request for Attorneys' Fees.

Defendant requests that the Court award it attorneys' fees as a prevailing party, on grounds that Plaintiffs "have, entirely without merit, selected an improper forum for their claims." Defendant's Brief, at 10. The Court may, in its discretion, award a reasonable attorneys' fee to a

prevailing party in an action under Section 1983. 42 U.S.C. § 1988(b). Although granting Defendant's motion to dismiss, the Court declines to award attorneys' fees in this case, as there is no indication that Plaintiffs' claims were frivolous or groundless.

> The Supreme Court has stated that stringent standards must be met before a Court may award attorneys fees to a prevailing defendant pursuant to 42 U.S.C. § 1988. The Court has stated that attorneys fees may be awarded "upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." Christianburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S. Ct. 694, 700, 54 L.Ed.2d 648 (1978). In that case, the Court went on to state that "it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation ..." Christianburg Garment Co. v. EEOC, 434 U.S. at 422, 98 S.Ct. at 701, 54 L.Ed.2d 648 (1978).

Nielson v. Soltis, Nos. 93-4088, 93-4098 , 94 WL 589460, at *11 (10th Cir. Oct. 20, 1994).

III.
Conclusion

Plaintiffs have alternative remedies to contest the validity of the Las Cruces ordinance, in administrative proceedings and in the criminal case in municipal court. They do not have a cause of action cognizable in federal court.

IT IS THEREFORE ORDERED that Defendant's August 27, 1999 motion to dismiss for failure to state a claim [Doc. 10] is hereby GRANTED, and the case is dismissed. Defendant's request for attorneys' fees is DENIED.

Dated at Albuquerque this 14th day of September, 1999.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge

ATTORNEY FOR PLAINTIFFS:
Randolph B. Felker, Esq.

ATTORNEY FOR DEFENDANT:
Kevin T. Riedel, Esq.